UNITED STATES *v.* BUCKLEY and others.

*(District Court, N. D. California. August 2, 1887.)*

1. SEAMEN—DESERTION—COASTING VESSELS—CONSTRUCTION OF STATUTES.
The act of congress of June 9, 1874, provides "*that none* of the provisions of the act entitled 'An act to authorize the appointment of shipping commissioners,' etc., approved June 17, 1872, shall apply to sail or steam vessels engaged in the 'coastwise trade,' except the coastwise trade between the Atlantic and Pacific coasts," etc. *Held,* that the effect of the act was to repeal, with the exceptions indicated, not only such *provisions* of the act of 1872 as applied distinctively to *vessels eo nomine,* but also the other provisions relating to masters and owners, and their duties, and to seamen and apprentices, and their discipline; and that seamen deserting from a coasting vessel plying between different California ports were not liable to information therefor.

2. STATUTES—REPEAL—REVISION—SHIPPING COMMISSIONERS.
Under the act of congress of June 22, 1874, providing that the Revised Statutes should take effect as of December 1, 1873; and Rev. St. § 5601, declaring that acts passed since that date should, "so far as they vary from or conflict with any provision contained in said Revision, have effect as subsequent statutes, and as repealing any portion of the Revision inconsistent therewith,"—so much of the act of June 7, 1872, entitled "An act to authorize the appointment of shipping commissioners," as is re-enacted in title 53, Rev. St., is repealed by the act of June 9, 1874.

Information for Desertion from a Coasting Vessel. On demurrer.

*George W. Towle,* special counsel on behalf of the United States.

*H. W. Hutton,* for defendants.

HOFFMAN, J. The information in this case charges the defendants with desertion from the steam-ship Queen of the Pacific, a coasting vessel plying between this port and San Diego, a port in this state. The offense is made punishable by section 51 of the act of June 7, 1872, and also by section 4596, Rev. St.

The information is demurred to, on the ground that those provisions are repealed by the act of June 9, 1874, (18 St. 64.) That act provides "*that none* of the provisions of the act entitled ' An act to authorize the appointment of shipping commissioners,' [giving the title of the act,] approved June 7, 1872, shall apply to sail or steam vessels engaged in the ' coastwise trade,' except the coastwise trade between the Atlantic and Pacific coasts," etc. The remaining provisions are somewhat obscure; but they need not here be considered, for it is not disputed that the vessel from which the men are alleged to have deserted was engaged in the coastwise trade between ports of this state.

It is contended on the part of the prosecution—*First*, that the provisions of title 53, Rev. St., are in force, unaffected by the act of June 9, 1874; and, *second*, that that act only affects such provisions of the original act of June 7, 1872, (re-enacted in title 53, Rev. St.,) as apply distinctly to *vessels*, and that the other provisions relating to masters and owners, and their duties, to seamen and apprentices, and their discipline, etc., are unaffected by it. These contentions will be considered in their inverse order.

1. Does the act of 1874 repeal all the provisions of the act of 1872, or only those relating to vessels *eo nomine?* In determining this question, it is proper to advert for a moment to the previous legislation on the subject.

One of the principal objects of the act of 1872, as indicated by its title, was to provide for the shipment of seamen before shipping commissioners, a class of officers created by the act. Section 12 provides that the master of every ship bound from a port in the United States to any foreign port, or of any ship of the burden of 75 tons or upward, bound from a port on the Atlantic to a port of the Pacific, shall, before she proceeds on such voyage, make an agreement, etc. The first proviso to this section allows the master to perform the duties of shipping commissioner in respect to his own crew in any customs district, when no shipping commissioner has been appointed. The second proviso exempts from the requirements of the section masters of vessels, where the seamen are entitled to participate in the results or profits of the cruise or voyage, and masters of coastwise and lake-going vessels that touch at foreign ports. Substantially the same provision is contained in the proviso to section 8. The act of 1873 further exempted from the operation of the twelfth section of the original act masters of vessels engaged in trade between the United States and British North American ports, or the West India islands, or the republic of Mexico. Such was the state of the law prior to the passage of the act of June 9, 1874. As to the effect of this legislation, some questions present themselves. Section 12 of the original act contains minute specifications as to the contents of the agreement to be entered into, before the shipping commissioner, between the master and the crew. A form of agreement is prescribed, to be followed as near as may be, and containing eight separate particulars set forth in the section. The first proviso authorizes the master, in districts where there is no shipping commissioner, to *himself*

*perform the duties of shipping* commissioner.   The second proviso declares
that the section shall not apply to masters of coastwise or lake-going
vessels that touch at foreign ports.   The eighth section provides that
"nothing in this act shall be so construed as to prevent the owner, con-
signee, or master of any ship, except such as are described in section 12
of this act, from performing himself, so far as the said ships are con-
cerned, the duties of shipping commissioner under this act."   The act
of 1873 further extended the exemption from the operation of section
12 to masters of vessels engaged in trade between the United States and
the British North American possessions, the West India islands, and the
republic of Mexico.

Was it the effect of this legislation to exempt the masters of the ex-
cepted vessels from the operation *of all* the provisions of the twelfth sec-
tion of the act of 1872, or merely, as might be inferred from the first
proviso, and the language of section 8, to allow them to perform them-
selves the duties of the shipping commissioner?   If the first view be
adopted, I find no provision in the original act, or the amendments to
it, which requires him to enter into any agreement whatever in writing
with the seamen shipped on the excepted vessels, either as to time of
service, nature and probable duration of the voyage, rate of wages, ca-
pacity in which they are to serve, scale of provisions to be served, etc.,—
stipulations which would seem to be as essential to the protection of sea-
men on the excepted, as on the foreign, voyages.   If the other view be
taken, the master is relieved from the necessity of going before the com-
missioner with his crew to acknowledge the execution of the agreement,
but he is nevertheless required to make it in writing, and containing all
the particulars mentioned in section 12.

I recur to the question presented in this case.   We have seen that the
provisions in the act of 1872, and the amendment of the act of 1873,
relate exclusively to the provisions of section 12 of the original act.   But
the act of June 9, 1874, provides *that none* of the provisions of the act
of 1872 shall apply to vessels engaged in the coastwise trade, etc.   It
is, as before stated, contended that the provisions abrogated are only
those relating *eo nomine* to vessels.   It is to be observed that the act does
not say, "none of the provisions [of the act of 1872] *relating to vessels* shall
apply to coastwise vessels," etc.; but it uses the unrestricted and com-
prehensive expression, "*none* of the provisions of the act shall apply to
such vessels."   It could not have been intended merely to relieve the
specified vessels and their masters from the operation of the twelfth sec-
tion of the act of 1872, for they were already excepted by the terms of
the act, and by the provisions of the act of 1873.   The act was intended
to have a broader and more comprehensive application.

In support of the interpretation of the act of 1874, which restricts its
application to those provisions of the act of 1872 relating to vessels, the
counsel for the prosecution had attempted to show that the provisions
of the act are susceptible of classification, and may be resolved into pro-
visions relating to the men and their duties, to the master and owners,
and to the vessels themselves.   But this classification seems to me im-

practicable, or founded on accidental phraseology used, rather than on any intention to discriminate between the different subjects of the enactment. Section 14 provides that, if any master, mate, or other officer shall knowingly receive on board of any merchant ship any seaman who shall have been engaged or supplied contrary to the provisions of this act, the ship shall incur a penalty not exceeding $200. This provision relates to seamen and their shipment. It also relates to the master and officers, and denounces an offense committed, the penalty for which is imposed on the ship. It is impracticable to refer the provision exclusively to either of the classes into which the act is claimed to be divided. So, in section 15, it is provided that for certain violations the *master* shall incur a penalty, for which penalty the ship shall be held liable. So, in section 41 the master or owners incur a penalty for not providing a medicine chest, etc.; and if the master neglects to serve out lime-juice or vinegar, etc., the penalty is imposed on him personally. Section 42 imposes a penalty on the master for not keeping on board proper weights, measures, etc. So, by section 45, a penalty is imposed on the master for not complying with the provisions of the law as to the effects of deceased seamen and apprentices, and the same penalty is imposed on the owners. The money, wages, and effects of any deceased seaman or apprentice are made recoverable in the same courts, and by the same modes of proceeding, by which seamen are enabled to recover wages; thus, *it* would seem, creating a lien upon the vessel.

From the above citations, it is, I think, apparent that no such separation or classification of the various provisions of the statute can be made as counsel suggests. Nor can any reason be conjectured why congress should have restricted the legislation of 1874 to the repeal of those sections alone which relate exclusively to vessels, if such sections can be found. If such was the intention of congress, it would have been far more natural to have designated by their numbers the sections, or parts of sections, intended to be abrogated. Neither can we suppose that congress meant to leave the greater part of the statute in force, but mutilated, and in some respects abortive; for offenses would remain forbidden and denounced, while all means of exacting the penalty would be taken away. All the acts on the subject are regulations of commerce. If the statute had declared that none of the provisions of the act of 1872 should apply to commerce carried on in vessels trading between the ports mentioned in the act, no doubt as to its construction could be entertained. The language employed is, "*none* of the provisions [of the act of 1872] shall be applied to *vessels engaged in the coastwise business.*" I think the expressions are equivalent. The same conclusion was reached by Fox, D. J., in *U. S.* v. *Bain.* In the case, Judge Fox holds that the effect of the act of 1874 was to strike from the Revised Statutes, and from the act of 1872, every provision therein relating to coastwise vessels, including the provision concerning "crimes and offenses;" and that a seaman shipped for a coastwise voyage was not liable to indictment for desertion. 5 Fed. Rep. 192. In *U. S.* v. *King,* BRUCE, J., held that the effect of the act of 1874 was to sweep away all the penal pro-

visions of the act of 1872, in so far as they applied to vessels in the coastwise trade, with the exceptions named in the repealing act.    23 Fed. Rep. 141.    See, also, *Scott* v. *Rose*, 2 Low. Dec. 382.

2. The objection that the act of 1874 does not repeal the provisions of the Revised Statutes taken from the act of 1872 can be readily disposed of.    That act of congress of June 22, 1874, provided that the Revised Statutes should take effect as of December 1, 1873; and by section 5601 it was declared that acts passed since that date should have full effect as if passed after the enactment of the Revised Statutes, and, "so far as such acts vary from or conflict with any provision contained in said Revision, they are to have effect as subsequent statutes, and as repealing any portion of the Revision inconsistent therewith."    *U. S.* v. *Bain, ubi supra.*    The act relied on by the defense in this case was passed June 9, 1874.    It therefore operated to repeal the provisions of the Revised Statutes taken from the act of 1872.    It necessarily described the act repealed by its title as it then stood in the statutes; for the Revised Statutes, which re-enacted its provisions, had not been passed.    The demurrer is sustained.